IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Kelly B. Conlan, *Plaintiff,* v. Kroll, LLC (f/k/a Duff and Phelps, LLC), et al., *Defendants.* | CIVIL ACTION NO. 25-988 |

**Pappert, J.**                                                                                                      **July 21, 2025**

## MEMORANDUM

Kelly Conlan was fired by Kroll LLC — for cause, Kroll said — two days before more than $600,000 in bonuses she'd earned were set to vest. Conlan sued Kroll and her former supervisors to recover those bonuses, severance pay and other damages, alleging that she was fired not for cause but rather because of her sex. The Defendants, in addition to moving for dismissal of some claims on the merits, ask the Court to dismiss the case in light of a forum-selection clause setting "[t]he courts of the State of New York" as the exclusive forum for "any claim arising out of or in connection with" the agreement governing her bonuses,[1] or alternatively under the doctrine of *forum non*

---

[1]  The Defendants originally moved the Court to transfer the case to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a). (Mot. 17, ECF No. 14-1.) In their original briefing, however, neither side addressed case law interpreting forum-selection clauses that select the courts *of* a particular state (in contrast to courts *in* a particular state) to refer to only state courts, not federal courts in the state. *See New Jersey v. Merrill Lynch & Co.*, 640 F.3d 545, 548–49 (3d Cir. 2011); *Rabinowitz v. Kelman*, 75 F.4th 73, 84 (2d Cir. 2023); *FindWhere Holdings, Inc. v. Sys. Env't Optimization, LLC*, 626 F.3d 752, 755 (4th Cir. 2010); *Seafarers Pension Plan ex rel. Boeing Co. v. Bradway*, 23 F.4th 714, 721 (7th Cir. 2022); *Simonoff v. Expedia, Inc.*, 643 F.3d 1202, 1205–06 (9th Cir. 2011); *Dixon v. TSE Int'l Inc.*, 330 F.3d 396, 398 (5th Cir. 2003). The Court instructed the Defendants to clarify, in light of this case law, whether they still wished to move for transfer to the Southern District of New York and if so, to address the cases. (ECF No. 17.) The Defendants then filed a supplemental brief asking the Court to dismiss rather than transfer. (ECF No. 18.)

*conveniens*. The Court grants the motion on the basis of the forum-selection clause and *forum non conveniens* and leaves the merits arguments to the New York state courts.

I

Kroll, a financial consultancy firm, hired Conlan as "Managing Director, Disputes & Investigations" in August 2019. (Am. Compl. ¶¶ 2, 21, ECF No. 6.) Conlan, a bankruptcy "attorney and advisor," came to the firm with twenty years of professional experience, including roles in both government and private practice. (*Id.* ¶¶ 19–20.) According to Conlan, Kroll hired her "to be a rainmaker for the Firm." (*Id.* ¶ 22.) Kroll made clear, she says, that all she had to do was "generate business" — she did not have to "attend team meetings or engage in other administrative-type activities," nor did she have to work during any particular hours or meet specific performance metrics. (*Id.* ¶¶ 24, 26.) Kroll also permitted Conlan to work remotely from her home in Newtown Square, PA, even though Kroll is headquartered in New York City. (*Id.* ¶¶ 2, 23.)

When Kroll hired Conlan, it agreed, among other things, that if it terminated Conlan without "Cause," it would award her "Severance Pay[]" equal to three months' salary. (*Id.* Ex. C at 4.) It also promised to pay her various initial bonuses, including a "Make-Whole Bonus" of $1 million in "Restricted Cash." (*Id.*) Conlan's offer letter[2] specified that payment of the Make-Whole Bonus was (1) conditioned on Conlan executing a "separate agreement" and (2) subject to the vesting schedule and specific terms and conditions set out in that agreement. (*Id.*) Conlan did execute the separate agreement — called the Restricted Cash Award ("RCA") Agreement — though not until

---

[2] The offer letter doubles as the employment contract between Conlan and Kroll. *See* (Am. Compl. ¶ 22, Ex. D at 2.) Conlan uses the terms "offer letter" and "employment agreement" interchangeably, (*id.*), so the Court does too.

after Kroll paid the first installment set out in the Agreement's vesting schedule. (*Id.* ¶ 32.) The RCA Agreement provides, among other things, that if Kroll terminates Conlan for "Cause" prior to any vesting date, Conlan forfeits the unpaid portions of the bonus. (*Id.* Ex. D at ¶ 2.b.ii.) The Agreement also provides that it "shall be governed by and construed in accordance with the laws of the State of New York" and that "[t]he courts of the State of New York shall have exclusive jurisdiction to settle any claim arising out of or in connection" with it. (*Id.* Ex. D at ¶ 10.)

Kroll fired Conlan — ostensibly for cause — on February 27, 2023, two days before the final installment of her Make-Whole Bonus was set to vest. (*Id.* ¶¶ 51, 53.) She says the decision was made by Kroll's president Shai Waisman, CEO Jacob Silverman, and Diles Derry, her direct supervisor. (*Id.* ¶¶ 5–7, 48, 52.) Also set to vest on March 1 were various installments of Conlan's annual bonuses from prior years. (*Id.* ¶¶ 41–42.) Those bonuses, like the Make-Whole Bonus, were governed by the RCA Agreement. (*Id.* ¶¶ 33, 41.) In total, $634,475.55 would have vested on March 1, 2023, an additional $186,743.66 on March 1, 2024, and $30,830.25 on March 1, 2025. (*Id.* ¶ 42.)

Conlan filed this suit in February of 2025. She claims that the RCA Agreement and Pennsylvania's Wage Payment and Collection Law entitle her to at least some of the bonuses that had not yet vested at the time she was fired. (*Id.* ¶ 98.) She also claims that her Employment Agreement and the WPCL entitle her to $87,500 in severance pay. (*Id.* ¶ 112.) In the alternative to the breach-of-contract and WPCL claims, Conlan asserts a claim of unjust enrichment based on Kroll's alleged failure to fairly compensate her for "the work and relationships that [she] originated that

continue to generate revenues for the firm." (*Id.* ¶ 123.)  Lastly, Conlan alleges that Kroll's decision to fire her, and to do so before her bonuses vested, was based on her sex, so she also asserts sex-discrimination claims under Title VII and the Pennsylvania Human Relations Act (PHRA).  (*Id.* ¶¶ 74, 126, 131.)

## II

A defendant may seek dismissal under Rule 12(b)(6) to enforce a forum-selection clause providing for a non-federal forum.  *Salovaara v. Jackson Nat. Life Ins. Co.*, 246 F.3d 289, 298 (3d Cir. 2001); *Podesta v. Hanzel*, 684 F. App'x 213, 216 (3d Cir. 2017).  The Defendants have done so here.  (Defs.' Supp. 3–4, ECF No. 18.)  Thus, in deciding whether to dismiss on the basis of the forum-selection clause, the Court assumes well-pleaded facts are true, construes those facts in the light most favorable to Conlan, and draws reasonable inferences from those facts.  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016).

A defendant seeking dismissal on the basis of *forum non conveniens* bears the burden of persuasion and "must provide enough information to enable the District Court to balance the parties' interests."  *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43–44 (3d Cir. 1988) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981)).  A district court generally may consider affidavits submitted by the parties in support of their positions, *id.*, but neither party has submitted any here.  The Court thus conducts its *forum non conveniens* analysis with reference only to Conlan's Amended Complaint and resolves any factual ambiguities against Kroll.

III

A

A forum-selection clause "represents the parties' agreement as to the most proper forum" and giving effect to such a clause "protects their legitimate expectations and furthers vital interests of the justice system." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62–63 (2013). Courts will thus enforce forum-selection clauses unless the resisting party makes a "strong showing" that enforcement "would be unreasonable under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972); *MacDonald v. CashCall, Inc*, 883 F.3d 220, 232 n.14 (3d Cir. 2018). The Supreme Court in *Bremen* set out the principal circumstances in which enforcement will be unreasonable: either (1) the selected forum is "so gravely difficult and inconvenient that [the resisting party] will for all practical purposes be deprived of [her] day in court," or (2) the party seeking enforcement procured the clause through "fraud or overreaching." *Bremen*, 40 U.S. at 15–18; *MacDonald*, 883 F.3d at 232 n.14. The resisting party must make a "strong showing" of unreasonableness. *Bremen*, 40 U.S. at 15.

Conlan here invokes the second of *Bremen*'s circumstances, arguing that the forum-selection clause in the RCA agreement is unenforceable because Kroll procured it by "overreaching." (Resp. 13–16, ECF No. 15); (Pl. Supp. 4–5, ECF No. 19.) The concept of "overreaching" is a nebulous one, *see Atlas Glass & Mirror, Inc. v. Tri-N. Builders, Inc.*, 997 F.3d 367, 375 (1st Cir. 2021); *Haynsworth v. The Corp.*, 121 F.3d 956, 965 (5th Cir. 1997), but courts generally agree that it refers to one party's use of its overwhelming bargaining power to coerce the other, *see Foster v. Chesapeake Ins. Co.*,

5

933 F.2d 1207, 1219 (3d Cir. 1991); *Gen. Eng'g Corp. v. Martin Marietta Alumina, Inc.*, 783 F.2d 352 (3d Cir. 1986); *Atlas Glass*, 997 F.3d at 375; *Haynsworth*, 121 F.3d at 965, 965 n.17; *see also Bremen*, 407 U.S. at 12–15 (suggesting that enforcement of forum-selection clauses procured by "undue influence" or "overweening bargaining power" is unreasonable).

Conlan's allegations do not support a reasonable inference, let alone make a "strong showing," that Kroll had overwhelming bargaining power over her. To the contrary, Conlan appears to have had the bargaining-power advantage. She came to Kroll with "twenty years of experience in the field" and extensive professional success. (Am Compl. ¶¶ 19–20.) She clearly was able to leverage that experience and success: she secured a fully remote, management-level position with no formal working hours, administrative obligations or performance metrics, plus initial bonuses of $1.5 million and $1 million more in stock. (*Id.* ¶¶ 21–26, Ex. C.) It's unlikely that Kroll, having conceded such favorable terms, was in any position to coerce Conlan's acquiescence to a forum-selection clause she apparently opposes so strongly.

Nevertheless, that's exactly what Conlan argues happened. She says that Kroll "imposed" the forum-selection clause by "sneaking [it] into" the RCA Agreement "long after she had any power to negotiate" its terms. (Resp. 15, ECF No. 15.) Her offer letter, however, suggests otherwise. It explicitly states that Conlan's Make-Whole Bonus was subject to a three-year vesting schedule with specific terms and conditions set out in a separate agreement, and that payment of the bonus was conditioned on her executing the separate agreement. (Am. Compl. Ex. C at 4.) It also said that her annual bonuses would be "subject to vesting and forfeiture conditions" that were not set

out in the offer letter and so were necessarily set out elsewhere. (*Id.* Ex. C at 3.) Conlan — an experienced lawyer — apparently never asked to see the terms to which her bonuses would be subject. *See* (*id.* ¶¶ 30–34.) And when Kroll eventually presented the RCA Agreement to her for signing, she apparently did not protest any of the terms. *See* (*id.*) Conlan cannot now — as she sues to enforce some of the RCA Agreement's terms, *see* (*id.* ¶ 110) — cry foul at the Agreement's selection of Kroll's home state (the border of which is a mere two hours from Conlan's home) as the exclusive litigation forum.

B

Once a court concludes that a forum-selection clause is enforceable against a party, it must then determine whether the clause embraces the party's specific claims. *See Collins on behalf of herself v. Mary Kay, Inc.*, 874 F.3d 176, 181 (3d Cir. 2017) (explaining the distinction between the "scope" of a forum-selection clause and the clause's "enforceability"). State contract law controls the interpretation of a forum-selection clause. *Id.* at 182–83. Because this Court sits in Pennsylvania, it must apply Pennsylvania's choice-of-law rules to determine which state's contract laws govern. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 497 (1941). Kroll asks the Court to apply New York law consistent with the RCA Agreement's choice-of-law provision, (Mot. 17),[3] and Conlan does not suggest any state at all. Pennsylvania courts typically enforce contractual choice-of-law provisions, *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994), so the Court will apply New York law.

---

[3] Kroll actually says that New York law should govern the "enforceability" analysis. (Mot. 17.) But federal law governs that question. *See In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 58 (3d Cir. 2018). The Court construes Kroll's invocation of the RCA Agreement's choice of New York law, (Mot. 18), as also arguing for application of New York law in *interpreting* the clause.

Interpreting the scope of a forum-selection clause, like any contractual provision, begins with the language the clause employs. *Jin Ming Chen v. Ins. Co. of the State of Pennsylvania*, 163 N.E.3d 447, 449–50 (N.Y. 2020); *see Couvertier v. Concourse Rehab. & Nursing, Inc.*, 985 N.Y.S.2d 683, 684 (N.Y. App. Div. 2014) ("[I]t is the language of the forum selection clause itself that determines which claims fall within its scope."). The forum-selection clause here says "[t]he courts of the State of New York shall have exclusive jurisdiction to settle any claim arising out of or in connection with this Award Agreement." (Compl. Ex C. 4.) So the question is whether Conlan's claims for breach of contract, violations of the WPCL, unjust enrichment and sex discrimination "aris[e] out of or in connection with" the RCA Agreement.

The phrase "arise out of" means to "originat[e] from" or otherwise have "some causal relationship [with]." *See Maroney v. New York Cent. Mut. Fire Ins. Co.*, 839 N.E.2d 886, 889 (N.Y 2005), *quoting Aetna Cas. & Sur. Co. v. Liberty Mut. Ins. Co.*, 459 N.Y.S.2d 158, 161 (N.Y. App. Div. 1983); *accord Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 129 (2d Cir. 2001) (Sotomayor, J.) (quoting Webster's Third New International Dictionary 117 (1986)) ("To 'arise' out of means 'to originate from a specified source.'"). And the phrase "in connection with" — like "relating to, "associated with," "with respect to," and "with reference to" — refers to "an established or discoverable relation," but not necessarily a causal one. *Coregis*, 241 F.3d at 129; *Whitaker v. Monroe Staffing Servs.*, LLC, 42 F.4th 200, 210 (4th Cir. 2022); *Huffington v. T.C. Grp., LLC*, 637 F.3d 18, 22 (1st Cir. 2011); *see also Bartels by & through Bartels v. Saber Healthcare Grp.*, LLC, 880 F.3d 668, 678 (4th Cir. 2018) (a dispute arises "in connection with" an agreement if is has "a significant relationship" to the agreement);

*John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997) (Alito, J.) (a dispute "arises in relation to" an agreement if it has a "logical or causal connection" with the agreement). So a party's claims "arise out of or in connection with" an agreement if they originate from it or have some relation to it, causal or otherwise.

Applying forum-selection clauses that use the phrase "arising out of or in connection with" (or something similar), New York courts consistently hold that the clauses encompass not only claims that seek to enforce the contract in which the clause appears, but also noncontractual claims concerning subject matter that the contract governs. *See Adler v. 20/20 Companies*, 919 N.Y.S.2d 38, 39–40 (N.Y. App. Div. 2011) (claim that employer violated state labor statute "ar[ose] out of or in connection with" the plaintiff's employment contract); *Tourtellot v. Harza Architects*, 866 N.Y.S.2d 793, 794–95 (N.Y. App. Div. 2008) (claims of contribution and common-law indemnification, pleaded in the alternative to claim of contractual indemnification, "ar[ose] under or in connection with" the contract providing for indemnification); *Couvertier.*, 985 N.Y.S.2d at 683–84 (claims of wrongful death, negligence and violations of public-health statute against long-term care facility "ar[ose] out of or related to" an agreement governing the facility's care of patient); *see also ErGo Media Cap., LLC v. Bluemner*, No. 15-cv-1377, 2015 WL 6442252, at *2, *5 (S.D.N.Y. Oct. 23, 2015) ("A contractually-based forum selection clause will also encompass tort claims if the tort claims involve the same operative facts as a parallel claim for breach of contract.") (cleaned up).

Initially, Conlan concedes that at least some of her claims originate from the RCA Agreement itself. (Pl. Supp. 6.) Specifically, most of her breach-of-contract and

9

WPCL claims are based on her allegation that she was fired without "Cause," as defined by the RCA Agreement, and that she is therefore entitled to receive certain bonus payments. (Am. Compl. ¶¶ 58, 60–61, 65, 98–99, 110.) Those claims thus "arise out of" the RCA Agreement.

Conlan's sex-discrimination claims are related to the RCA Agreement's subject matter. Specifically, Conlan alleges that if she was not a woman, Kroll would not have fired her until after March 1, 2023, if at all, and her bonuses would consequently have vested pursuant to the RCA agreement. (*Id.* ¶ 74.) So her discrimination claims are in large part another avenue for recovering her bonuses. The claims also turn on the same core question as the claims that originate from the RCA Agreement, namely, why did Kroll fire her? The discrimination claims thus "arise . . . in connection with" the RCA Agreement.

Conlan's unjust-enrichment claim also relates to the RCA Agreement's subject matter because the claim is merely an alternative, non-contractual route to recover the same amounts she seeks pursuant to the RCA Agreement. Conlan argues that her unjust-enrichment claim cannot relate to the RCA Agreement because the claim is only viable if no applicable contract exists between the parties. (Pl. Supp. 5); *see also Artisan Builders, Inc. v. Jang*, 271 A.3d 889, 894 (Pa. Super. 2022) (no unjust-enrichment claim if applicable contract exists); *Turan v. Union Modular Homes, LLC*, 234 A.D.3d 1063, 1068) (N.Y. App. Div. 2025) (same). But New York (and most other) courts hold that where contractual claims are embraced by a forum-selection clause, noncontractual and quasi-contractual claims premised on the same facts are also embraced by the clause. *Tourtellot*, 866 N.Y.S.2d at 794; *see also, e.g., Crescent Int'l*,

*Inc. v. Avatar Cmtys., Inc.*, 857 F.2d 943, 944–45 (3d Cir. 1988); *Faloni & Assocs., LLC v. Citibank N.A.*, No. 19-cv-4195, 2021 WL 1381203, at *5 (D.S.D. Apr. 12, 2021) (collecting cases).

That leaves only Conlan's breach-of-contract and WPCL claims in which she seeks $85,700 in severance pay pursuant to her employment agreement. (Am. Compl. ¶¶ 71, 101, 112).[4] These claims do not "arise under" the RCA Agreement because they seek to enforce the terms of a different contract. They also do not arise "in connection with" the RCA Agreement because they have no relation to her bonus payments, the only subject matter the RCA Agreement governs. *See* (*id.* ¶¶ 33, 101, Ex. D.) Conlan's claims for severance are thus not within the scope of the forum-selection clause.

## IV

The Court will nevertheless dismiss Conlan's claims for severance pay pursuant to the doctrine of *forum non conveniens*. A court considering a *forum non conveniens* dismissal must first determine that an adequate alternative forum exists. *Trotter v. 7R Holdings LLC*, 873 F.3d 435, 828 (3d Cir. 2017). Defendants are amenable to process in New York and Conlan may bring her claims there, so New York courts present an adequate alternative forum. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.6 (1981). The Court must next "determine the amount of deference due to [Conlan's] choice of forum and balance the relevant private and public interest factors." *Id.* (cleaned up). Here, Conlan is a domestic plaintiff, so the Court begins with a "strong presumption . . . in favor of [her] chosen forum" and will only dismiss if "the balance of

---

[4] To the extent Conlan brings an additional unjust-enrichment claim as an alternative route to obtaining severance pay under the employment agreement, that claim is subject to the *forum non conveniens* analysis in Part IV.

the public and private interest factors clearly favors" New York. *Kisano Trade & Inv. Ltd. v. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013) (cleaned up).

The private interests the Court must consider are the relative ease of access to witnesses and evidence the parties would have in each forum and any "other practical problems" either forum would present. *Atl. Marine*, 571 U.S. at 62 n.6 (quoting *Piper*, 454 U.S. at 241 n. 6). The private interests here favor New York. Most of the relevant evidence and witnesses will be in New York because most of the events giving rise to Conlan's severance-pay claims occurred there. Indeed, she is only entitled to severance if she was fired without "Cause," (Am. Compl. Ex. C at 4–5), and both the firm and most of the decisionmakers are based in New York, (*id.* ¶¶ 5–6).[5] Perhaps more importantly, Conlan's severance-pay claims depend largely on the same factual circumstances as do the claims subject to the RCA Agreement's forum-selection clause. Since those other claims have to be litigated in New York, retaining her severance-pay claims in this Court would result in duplicative litigation and unnecessarily waste the parties' time and money.

The public interests the Court must consider include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine*, 571 U.S. at 62 n.6 (cleaned up). The second consideration slightly favors New York because the decision to fire Conlan, which is what gave rise to this case, was apparently made in New York. *See* (Am.

---

[5] The only non-New-York-based decisionmaker lives in the United Kingdom, (Am. Compl. ¶ 7), so taking his deposition and securing his attendance at trial will be inconvenient regardless of whether the case proceeds here or in New York.

Compl. ¶¶ 2–3, 18.) The third is a wash because one claim is based on New York law and one on Pennsylvania law. *See* (Am. Compl. ¶ 111, Ex. C at 7.) But the first consideration tips the public-interest balance strongly in favor of New York. Again, most of the claims Conlan asserts against Kroll will be litigated in a New York state court. Adding two factually similar claims to the mix will not meaningfully burden that court. Separately litigating those two claims here would, however, unnecessarily burden this Court and contribute to congestion.

Accordingly, both the private and public interests clearly favor New York and overcome the strong presumption in favor of Conlan's chosen forum.[6]

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.

---

[6] Kroll also moved for dismissal of several claims on the merits. (Mot. 1.) Indeed, Kroll styled the motion as one seeking the merits dismissals first, and *then* dismissal of the remaining claims pursuant to the forum-selection clause and *forum non conveniens*. But when courts determine that the appropriate forum for a case is elsewhere, they typically leave the merits to be resolved in that other forum. *See, e.g., GB Grp., LLC v. Am. Transportation Grp. Ins. Risk Retention Grp.*, Inc., No. 21-cv-03163, 2022 WL 20099260, at *3 (E.D. Pa. Nov. 28, 2022); *Zeikos Inc. v. Walgreen Co.*, No. 21-cv-19993, 2023 WL 239957, at *7 (D.N.J. Jan. 18, 2023); *Auxer v. Alcoa, Inc.*, No. 09-cv-1429, 2010 WL 1337725, at *13 (W.D. Pa. Mar. 29, 2010), *aff'd*, 406 F. App'x 600 (3d Cir. 2011). Since New York's courts are the appropriate forum for Conlan's claims, the Court will leave resolution of the merits to those courts.